**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 14-cv-00184-RM-KMT

OBERMEYER HYDRO ACCESSORIES, INC. d/b/a
OBERMEYER HYDRO, INC.,

    Plaintiff,

v.

CSI CALENDERING, INC. d/b/a/ CSI CALENDERING
SPECIALISTS, INC., a North Dakota corporation,

    Defendant.

---

## ORDER

---

This matter is before the Court on Defendant CSI Calendering, Inc.'s ("CSI") motion to dismiss the fifth claim for relief in Plaintiff's First Amended Complaint. (ECF No. 18.) Plaintiff Obermeyer Hydro Accessories, Inc. ("Obermeyer"), in Claim Five of the First Amended Complaint, alleges Defendant violated the Texas Deceptive Trade Practices-Consumer Protection Act ("TDTPPA"), Tex. Bus. & Com. Code Ann. §§ 17.41-17.63 (West 2013). (ECF No. 9 ¶¶ 72-77.) Plaintiff alleges that "[o]ver the course of 2012 and 2013, Defendant overcharged Plaintiff hundreds of thousands of dollars for the purchase of certain fabric and the treatment of that fabric. . . ." (ECF No. 9 ¶ 8.)

For the reasons stated below, the Court GRANTS Defendant's motion to dismiss Claim Five in Plaintiff's First Amended Complaint.

I.  **BACKGROUND**

Plaintiff is a provider of hydropower and water-control equipment, which includes inflatable rubber structures for industrial use. (ECF No. 9 ¶ 9.) Plaintiff uses treated polyester fabric ("Fabric") in connection with certain of its manufacturing processes. (ECF No. 9 ¶ 10.) That Fabric must be treated by a process called calendering ("Calendering"). (ECF No. 9 ¶ 10.)

Since 2010, Plaintiff has submitted to Defendant numerous purchase orders for Fabric and Calendering. (ECF No. 9 ¶ 15.) In November 2012 and July 2013, Plaintiff submitted to Defendant numerous purchase orders for Fabric and Calendering to which Defendant often agreed. (ECF No. 9 ¶¶ 19-20, 23, 25, 32-33, 35-36, 37, 39.) In December 2013, a dispute arose between Plaintiff and Defendant as to the price that had been charged for Fabric and Calendering Defendant provided to Plaintiff. (ECF No. 9 ¶¶ 45-46.)

Plaintiff's First Amended Complaint alleges five claims for relief under theories of: (1) breach of contract (ECF No. 9 ¶¶ 49-56); (2) promissory estoppel (ECF No. 9 ¶¶ 57-62); (3) money had and received (ECF No. 9 ¶¶ 63-67); (4) unjust enrichment (ECF No. 9 ¶¶ 68-71); and (5) a violation of the TDTPPA (ECF No. 9 ¶¶ 72-77).

II. **LEGAL STANDARD**

A.  **Rule 12(b)(6) Motion**

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must be dismissed if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a

complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . ." *Id*. at 555 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*. A "plaintiff must 'nudge [] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . . Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original, internal citation and quotation omitted).

The Tenth Circuit Court of Appeals has held "that plausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (internal quotation and citation omitted). The Tenth Circuit has further noted "that the nature and specificity of the allegations required to state a plausible claim will vary based on context." *Id*. (Internal quotation and citation omitted.) Thus, the Tenth Circuit "concluded the *Twombly/Iqbal* standard is 'a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the [Supreme

3

C]ourt stated will not do.'" *Id*. (Citation omitted.)

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in a plaintiff's favor. *Morse v. Regents of the Univ. of Colo.*, 154 F.3d 1124, 1126-27 (10th Cir. 1998) (citation omitted); *Seamons v. Snow*, 84 F.3d 1226, 1231-32 (10th Cir. 1996) (citations omitted). However, "when legal conclusions are involved in the complaint 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to [those] conclusions. . . .'" *Khalik*, 671 F.3d at 1190 (quoting *Iqbal*, 556 U.S. at 678). "Accordingly, in examining a complaint under Rule 12(b)(6), [the court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Id*.

### III. ANALYSIS[1]

At issue[2] is whether Plaintiff's fifth claim is exempt under the TDTPPA. (ECF No. 18 at 3.) Defendant argues that under Section 17.49(g) of the TDTPPA[3], Tex. Bus. & Com. Code Ann. § 17.49, Plaintiff's purchases constituted a set of transactions relating to the same project, involving total consideration by Plaintiff of more than $500,000. (ECF No. 18 at 3-4.) Plaintiff

---

[1] Plaintiff alleges that this dispute is governed by the laws of the State of Texas or, in the alternative, governed by the laws of the State of Colorado. (ECF No. 9 ¶ 6.) Defendant denies this allegation. (ECF No. 38 ¶ 6.) Neither party, however, disputes that Plaintiff's Fifth Claim at issue before the Court concerns the TDTPPA, Tex. Bus. & Com. Code Ann. §§ 17.41-17.63 (West 2013). Plaintiff, in response to Defendant's motion to dismiss, uses Texas's canons of statutory interpretation. (ECF No. 23 at 7-12.) Defendant does not contest the application of Texas's canons of statutory interpretation. (*See generally* ECF No. 24.) Therefore, the Court finds that Defendant waived contesting the application of Texas's canons of statutory interpretation for the purposes of addressing Defendant's motion to dismiss. *See Idg, Inc. v. Cont'l Cas. Co.*, 275 F.3d 916, 920 (10th Cir. 2001) (citing *Mauldin v. Worldcom, Inc.*, 263 F.3d 1205, 1212 (10th Cir. 2001) (holding that parties may waive choice of law arguments by failing to adequately brief them) and *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1547 (10th Cir. 1995)). The Court reserves ruling on which forum's law applies to Plaintiff's remaining claims that arise under state law and invoke the Court's diversity jurisdiction.

[2] Defendant, in passing, argues that "Plaintiff fails to identify any advertisement, statement or representation made by CSI" that would violate the TDTPPA. (ECF No. 18 at 3.) Defendant's undeveloped and perfunctory argument, *i.e.*, that Plaintiff fails to allege the essential elements of a TDTPPA violation, is waived. *See United States v. Hardman*, 297 F.3d 1116, 1131 (10th Cir. 2002).

[3] Defendant incorrectly cites Section 17.46 of the TDTPPA in its motion to dismiss. (ECF No. 18 at 3.)

responds that its purchases were not related to the same project and thus, its claim is not exempt from the TDTPPA. (ECF No. 23 at 7-12.)

Section 17.49(g) provides that the TDTPPA shall not apply to

a cause of action arising from a transaction, a project, or a set of transactions relating to the same project, involving total consideration by the consumer of more than $500,000, other than a cause of action involving a consumer's residence.

Tex. Bus. & Com. Code Ann. § 17.49(g). The terms "project" and "transaction" are not defined in the TDTPPA. *See generally* Tex. Bus. & Com. Code Ann. § 17.45. Thus, the Court reverts to general statutory-construction principles. The purpose of the TDTPPA is to "protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection." Tex. Bus. & Com. Code Ann. § 17.44(a). And another court has found that the purpose of Section 17.49(g) is to "maintain the [TDTPPA] as a viable source of relief for consumers in small transactions and to remove litigation between businesses over large transactions from the scope of the [TDTPPA]." *Geodominion Petroleum, Inc. v. Boone Exploration, Inc.*, Case No. 13-06-00430-CV, 2008 WL 3521966, at *4 (Tex. App. Ct. Aug. 14, 2008) (internal quotation and citation omitted). The Court's primary goal in interpreting a statute "is to ascertain and give effect to the Legislature's intent in enacting it." *In re Canales*, 52 S.W.3d 698, 702 (Tex. 2001) (citations omitted). The Court must examine the statute's plain language and assume the Legislature tried to say what it meant. *City of Seabrook v. Port of Hou. Auth.*, 199 S.W.3d 403, 406-07 (Tex. App. Ct. 2006). As initial matter, the Court looks to the plain and ordinary meaning of the statute's words to effectuate the Legislature's intent. *Id*. The Court will interpret the statute in a manner not to render any part of the statute meaningless or superfluous. *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 256 (Tex. 2008) (citations

5

omitted).

Without a statutory definition, the Court uses the term "project" as it is ordinarily defined which is "an individual or collaborative enterprise that is carefully planned and designed to achieve a particular aim" or "a proposed or planned undertaking." Oxford Am. Dictionary 1396 (3d ed. 2010).

In this case, Plaintiff alleges Defendant "overcharged [it] hundreds of thousands of dollars for the purchase of certain fabric and the treatment of that fabric in a process known as Calendering." (ECF No. 9 ¶ 8.) Thus, the collaborative enterprises[4] between Plaintiff (consumer) and Defendant (seller) were to achieve two particular aims: (1) the sale of Fabric; and (2) Calendering of that Fabric. It is of no importance that Plaintiff engaged in "discrete purchase orders." (ECF No. 23 at 9.) Rather, the "project" was accomplished by Plaintiff submitting and Defendant agreeing to sell or Calender orders of Fabric. (ECF No. 9 ¶¶ 10, 12, 15, 19-20, 23, 25, 32-33, 35-37, 39.) Again, the "planned undertaking" was the submission and sale of (1) Fabric orders or (2) Calendering orders of the Fabric.

It is Plaintiff's position that "project" refers to the undertaking in which it would engage subsequent to the sale and Calendering of the Fabric. (ECF No. 23 at 9-12.) And because Plaintiff purchased Fabric and Calendered Fabric for multiple of its "projects," such that no series of transactions surpassed the $500,000 threshold for TDTPPA exemption, Plaintiff argues it plausibly states a claim for relief. (ECF No. 23 at 9-12.) The Court finds Plaintiff's interpretation of "project" odd in light of the TDTPPA's purposes regarding the relationship

---

[4] The Court notes that Plaintiff's First Amended Complaint alleges that it would submit "Fabric purchase order[s], separate and apart from any purchase order for Calendering." (ECF No. 9 ¶ 12.) Similarly, the First Amended Complaint alleges that Plaintiff would request Calendering "using a Calendering purchase order, separate and apart from any purchase order for the Fabric." (ECF No. 9 ¶ 12.) The gravamen of the First Amended Complaint concerns a dispute as to whether Defendant could combine the two orders for pricing purposes. (ECF No. 9 ¶¶ 42-46.) At this matter's procedural posture, the Court must assume as true that Plaintiff engaged Defendant on two separate "projects," *i.e.*, Fabric orders and Calendering orders.

between the consumer and seller. Rather, the Court finds its interpretation of "project" consistent with the TDTPPA's purpose. The TDTPPA's purpose is to protect the consumer vis-a-vis the seller of goods or services. Tex. Bus. & Com. Code. Ann. § 17.44(a). To that end, it would make little (to no) sense to define "project" as the undertaking proposed solely by the consumer. Rather the focus of the TDTPPA is on the relationship between the consumer and the seller. Thus, "project" must be defined in relation to both parties. The Court finds further support for its holding in the TDTPPA's "consumer" definition in terms of this relationship: "consumer" means [one] who seeks or acquires by purchase or lease, any goods or services. . . ." Tex. Bus. & Com. Code Ann. § 17.45(4). The TDTPPA term "consumer" makes no reference to any subsequent undertakings.

To this end, the Court must analyze whether either Plaintiff's Fabric purchase orders or Calendering orders exceeded $500,000. Taking Plaintiff's allegations as true on a motion to dismiss, Plaintiff made the following Fabric purchases:

(1) Purchase Order Number 12-01-749 for $74,800 (ECF No. 9 ¶¶ 19-20);

(2) Revised Purchase Order Number 12-01-749 for an additional $149,600 (ECF No. 9 ¶¶ 23, 25);

(3) Purchase Order Number 13-00-013 for $374,000 (ECF No. 9 ¶¶ 32-33); and

(4) Purchase Order 13-00-019 for $149,600 (ECF No. 9 ¶¶ 35-36).

Thus, Plaintiff made a series of transactions related to Fabric purchases (the "project") which exceed $500,000. Thus, Claim Five is exempt under the TDTPPA. The Court need not consider whether the series of transactions related to Calendering exceeded $500,000.

The Court does not find *Cotton Patch Café, Inc. v. Micros Sys. Inc.*, Case No. MJG-09-3242, 2012 WL 5986773, at *8-9 (D.Md. Nov. 27, 2012) controlling in this matter. Rather, the

Court finds more persuasive the holdings and logic in *Aluchem, Inc. v. Sherwin Alumina, L.P.*, Case No. C-06-183, 2007 WL 1100473, at *6-7 (S.D. Tex., April 11, 2007), *Fidelity Telealarm, L.L.C. v. Silver Ress., Inc.*, Case No. 01-2912, 2004 WL 1047661, at *5-7 (E.D.Pa. May 7, 2004), and *Space Maker Designs, Inc. v. Weldon F. Stump & Co., Inc.*, Case No. 3:02-CV-0378-H, 2003 WL 21414726, at *2 (N.D. Tex. June 16, 2003).  In *Fidelity Telealarm*, the court found that a distribution relationship over several years in which total consideration exceeded $500,000 was a "project" and thus, the plaintiff's claim was exempt from the TDTPPA.  *Fidelity Telealarm*, 2004 WL 1047661 at *5-7.  While in this matter there is no formal relationship in the nature of a "distributor relationship," Plaintiff refers to a "typical course of conduct" between the parties.  (ECF No. 9 ¶¶ 12-14.)  Thus, analogous to the relationship between the parties in *Fidelity Telealarm*, in this matter, the parties had an ongoing relationship for the purchasing and selling of Fabric and Calendering of that Fabric in which the total consideration exceeded $500,000.  (ECF No. 9 ¶¶ 19-20, 23, 25, 32-33, 35-36.)

## IV. CONCLUSION

Based on the foregoing, the Court:

(1) GRANTS Defendant's motion to dismiss Claim Five in Plaintiff's First Amended Complaint (ECF No. 18); and

(2) ORDERS that the matter will proceed on Claims One, Two, Three, and Four in Plaintiff's First Amended Complaint (ECF No. 9 ¶¶ 49-71).

DATED this 5th day of February, 2015.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge