**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Case No. 14-cv-00184-RM-KMT

OBERMEYER HYDRO ACCESSORIES, INC.,

    Plaintiff,

v.

CSI CALENDERING, INC.,

    Defendant.

___

**OPINION AND ORDER**
___

Pending before the Court are the following motions to exclude expert testimony: (1) plaintiff Obermeyer Hydro Accessories, Inc.'s ("plaintiff") Motion to Exclude Expert Testimony of Jeff Leach ("the Leach motion") (ECF No. 160); and (2) defendant CSI Calendering, Inc.'s ("defendant") Motion to Exclude Plaintiff's Rebuttal Expert Witness Disclosures and Exclude Expert Testimony, which seeks to exclude the testimony of Henry K. Obermeyer ("the Obermeyer motion") (ECF No. 161).[1] The Court addresses each motion *infra*, and makes the following findings.

**I.    Legal Standard**

Rule 702 of the Federal Rules of Evidence ("Rule 702") governs the admission of expert evidence in federal court. Fed.R.Evid. 702; *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147, 119 S.Ct. 1167 (1999). Rule 702 provides as follows.

---

[1] Also pending before the Court are two motions in limine, which will be addressed at a later stage.

> A witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed.R.Evid. 702.

The Court's role in considering proposed expert evidence is one of a "gatekeeper." *Kumho Tire*, 526 U.S. at 147. Factors that might be relevant in carrying out this role include: (1) whether a theory or technique can be or has been tested; (2) whether a theory or technique has been subjected to peer review and publication; (3) whether there is a high known or potential rate of error to a technique and whether there are standards controlling the technique's operation; and (4) whether the theory or technique enjoys general acceptance within a relevant community. *Id*. at 149-150. These factors "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Id*. at 150 (quotation omitted).

The proponent of expert evidence bears the burden of establishing its admissibility. *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 n.4 (10th Cir. 2001).

**II.     Discussion**

   **A.     The Leach Motion**

Plaintiff objects to the entirety of defendant's expert's, Jeff Leach ("Mr. Leach"), report. (*See generally* ECF No. 160.) In doing so, plaintiff addresses each bullet point heading of the report and the paragraphs following said headings. The Court follows a similar approach in determining what opinions, if any, may be allowed at trial.

The first heading is: "'Turnkey' has a specific meaning in the calendering industry." (ECF No. 160-1 at 5.) The first paragraph thereunder merely discusses certain things that are included in a quote, and says what was confirmed in an email. (*Id*.) This testimony would not be helpful to a jury, as a jury is equally capable of confirming what a quote and an email says. Moreover, Mr. Leach does not state that any part of the first paragraph is based on any particular piece of his experience. Therefore, the first paragraph will be excluded.

The second paragraph under the first heading explains the meaning of the term "turnkey" in the calendering industry. (*Id*.) The Court sees no problem with this testimony, given that it is based upon Mr. Leach's knowledge of how the term is used. Moreover, the Court notes that it does not appear that plaintiff objects to this specific paragraph in its motion. (*See* ECF No. 160 at 8-9.) Therefore, the second paragraph will be allowed.

In the third paragraph under the first heading, Mr. Leach states the parties' agreed upon price. (ECF No. 160-1 at 6.) However, the parties' agreed upon price is the essential dispute in this case. (*See* ECF No. 147 at 2-3.) And Mr. Leach provides no explanation for how he has been able to resolve this essential dispute. Notably, contrary to defendant's assertions in response (*see* ECF No. 164 at 6), Mr. Leach does not say that his opinion has been reached in light of his knowledge, how the term turnkey is used in the industry, or, even if those things were said, how they help resolve the dispute between these parties as to what they agreed. As a result, the third paragraph will be excluded.

The second heading reads: "The documents in this transaction clearly show an agreement for the turnkey product." (ECF No. 160-1 at 6.) The entirety of this heading and the paragraph below will be excluded, essentially for similar reasons discussed *supra*. Notably, again, Mr. Leach appears

3

to have simply adopted the role of someone who has reviewed various documents and come to a determination as to what they may mean. Nowhere does Mr. Leach purport to explain how his knowledge or experience is relevant to his opinion, other than his non-expert knowledge and experience in being able to read. Because a jury is more than capable of performing the exact same role, the Court will not allow Mr. Leach to testify as to whether various documents show an agreement as to price.

The third heading is: "Selling products at a turnkey rate is substantially different from other, standard business arrangements." (ECF No. 160-1 at 6.) The Court sees no problem with this heading or the paragraph thereunder. Mr. Leach merely explains how providing a turnkey product is different to standard business models in the calendering industry. Given that Mr. Leach purportedly has experience in the industry and knowledge of providing turnkey products, this opinion is easily within his stated expertise. Contrary to plaintiff's assertion (*see* ECF No. 160 at 11-12), there is no indication that this opinion is premised upon an agreed price of $5.97 per pound, and the Court cannot understand why the opinion would need such a premise. In addition, the Court disagrees that the opinion has no factual support; it is based upon Mr. Leach's understanding of providing turnkey products. To the extent that plaintiff believes that Mr. Leach's opinion ignores other facts, plaintiff will be more than able to ask Mr. Leach about those purportedly missing facts on cross-examination.

The fourth heading reads: "With turnkey pricing, a vendor has the risk that [the] customer will fail to pay or fail to order the specified quantity." (ECF No. 160-1 at 6.) The first paragraph thereunder is not helpful to a jury. It is simply a commentary on the state of affairs when a customer elects turnkey pricing. Moreover, the language Mr. Leach uses—such as "become his customer's

bank" and "without ever spending a dime"—suggests a partisan bias to Mr. Leach's opinion. To the extent defendant "alone" bore financial risk and effectively extended a line of credit to plaintiff, defendant can present such evidence in another form. As a result, the first paragraph will be excluded.

The second paragraph under the fourth heading is a different matter. That paragraph is shorn of Mr. Leach's partisan language, and is premised upon Mr. Leach's knowledge of the calendering industry. Moreover, it does not appear that plaintiff specifically objects to this paragraph. (*See* ECF No. 160 at 13-14.) As a result, the second paragraph under the fourth heading (and the fourth heading itself) will be allowed.

The fifth heading is: "With turnkey pricing, a vendor bears the risk of yield loss." (ECF No. 160-1 at 7.) The entirety of this heading and the paragraphs thereunder will be allowed. In essence, Mr. Leach explains the calendering process and how that process can result in lost fabric. Mr. Leach then explains that, under turnkey pricing, the cost of lost fabric is borne by the vendor. The Court sees nothing wrong with this straightforward and helpful testimony. It is certainly not obvious to a juror that calendering may result in lost fabric and that the cost of such fabric has to be borne by one of the parties. In addition, plaintiff's arguments against this testimony are premised upon a faulty assumption. According to plaintiff, Mr. Leach stated that the risk of yield loss justified the price plaintiff paid. (ECF No. 160 at 14.) However, Mr. Leach made no such statement.

The sixth heading reads: "Based on my knowledge of the industry, this sale was in line with industry standards." (ECF No. 160-1 at 7.) The first paragraph thereunder states that defendant's quote "could not be any clearer" and various events occurred after the quote was provided. This paragraph is not helpful to a jury. Nowhere does Mr. Leach state that his opinion—that the quote

was clear—is based upon his experience or industry knowledge. Rather, it appears just as likely that the opinion is based upon precisely what a juror will do when he or she comes to review the quote: notably, reading the quote. As for the subsequent events, a jury is just as capable of determining what events happened after the quote was sent. Therefore, the first paragraph will be excluded.

The second paragraph under the sixth heading is a closer call. In the first sentence, Mr. Leach noticeably undercuts his opinion by stating that he has not examined defendant's cost structure, and by only stating that defendant's price "appears" in line with the market. Nonetheless, the Court finds that those holes in the opinion are best left for cross-examination, given that Mr. Leach does state that he considered the description of the product and his knowledge of costs in the industry. As for the second sentence, provided that the word "logically" or anything similar is not used, the Court will allow the opinion. To the extent plaintiff believes that defendant did not bear the financial risk of the project or that the risk defendant bore did not justify defendant's price, plaintiff can make those points during cross-examination of Mr. Leach. As a result, the second paragraph will be allowed with the one exclusion mentioned *supra*.

The Court will not allow the heading itself, however, because the opinions thereunder do not support it. Notably, Mr. Leach states that the *price* appears in line with the market for this type of sale. Mr. Leach does not state that the parties' sales were in line with industry standards.

Accordingly, the Leach motion is GRANTED IN PART and DENIED IN PART.

**B.     The Obermeyer Motion**

Defendant objects to the entirety of plaintiff's rebuttal expert's, Henry K. Obermeyer ("Mr. Obermeyer"), proposed testimony. Defendant objects on the following grounds: (1) Mr. Obermeyer's proposed testimony is not based upon his personal knowledge, and thus, plaintiff was

6

required to produce an expert report from Mr. Obermeyer; (2) to the extent plaintiff was not required to produce an expert report, plaintiff failed to meet the requirements of Fed.R.Civ.P. 26(a)(2)(C) ("Rule 26(a)(2)(C)") in disclosing Mr. Obermeyer's proposed testimony; and (3) plaintiff's failure to satisfy Rule 26(a)(2)(C) was not substantially justified or harmless. (*See generally* ECF No. 161.) The Court will address each argument in turn.

1. **Was an Expert Report Required?**

A written report must be disclosed by a witness "if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Fed.R.Civ.P. 26(a)(2)(B). Although plaintiff designated Mr. Obermeyer as a non-retained expert (ECF No. 161-1 at 3), defendant argues that Mr. Obermeyer is, in fact, a retained expert because his opinion—about the industry charge for finished products—is necessarily based upon information outside Mr. Obermeyer's personal knowledge (ECF No. 161 at 6-8.) In response, plaintiff asserts that all of Mr. Obermeyer's opinions will be based upon his firsthand experience of matters in this case, given that he is plaintiff's President. (ECF No. 162 at 9-12.)

The Court agrees with plaintiff that an expert report was not required under the circumstances of this case. The primary reason is that, in determining whether a report is required, "it is the substance of the expert's testimony" that controls. *Trejo v. Franklin*, 2007 WL 2221433, at *2 (D. Colo. July 30, 2007). Here, except in one instance,[2] in responding to the Obermeyer motion, plaintiff has limited Mr. Obermeyer's testimony to only those matters that are within his personal

---

[2] The one instance is Mr. Obermeyer's opinion that defendant's yield loss for the parties' transactions was minimal. (*See* ECF No. 162 at 9.) There is simply no explanation for how Mr. Obermeyer, as *plaintiff's* President, would have personal knowledge of *defendant's* yield loss.

7

knowledge and which were learned while the facts of this case occurred in real time. In light of the cases defendant cites with respect to when an expert should be considered retained (*see* ECF No. 161 at 4-5), the Court sees no reason why plaintiff needed to produce an expert report from Mr. Obermeyer in light of how his proposed testimony has been limited.

That being said, in limiting Mr. Obermeyer's proposed testimony, plaintiff has also effectively changed at least one of the topics upon which Mr. Obermeyer hopes to testify. More specifically, plaintiff disclosed that Mr. Obermeyer would testify that defendant's price of $5.97 per pound was substantially in excess of established pricing in the industry, and a price of between $3.63 to $4.04 per pound was generally accepted and prevailing. (ECF No. 161-1 at 4.) As plaintiff's response makes clear, though, Mr. Obermeyer does not really plan on testifying about established pricing in the industry or generally accepted prices. Instead, Mr. Obermeyer plans to testify about what *he* paid or was offered as a price to fill orders that defendant did not fill after the parties' dispute first erupted. (ECF No. 162 at 10-11.) As a result, Mr. Obermeyer will not be allowed to testify about generally accepted prices, prevailing market rates, or anything along those lines, because he simply does not have personal knowledge arising from this case's underlying facts of those matters. So it is clear, the Court will accept testimony along the lines of: defendant's alleged pricing of $5.97 per pound for finished 1000/4/3 tire cord calendered with AB2530 or its equivalent, together with polyester, is substantially in excess of *prices plaintiff paid or was offered* during 2013-2014, *which* ranged between $3.63 to $4.04 per pound of finished product.

### 2. Did Plaintiff Comply with Rule 26(a)(2)(C)?

Rule 26(a)(2)(C) provides that, when a written report is not required, a party's disclosure must state (i) the subject matter on which the witness is expected to present evidence, and (ii) a summary of the facts and opinions to which the witness is expected to testify.

Here, plaintiff disclosed that Mr. Obermeyer was expected to testify that (1) "the opinions offered by Mr. Leach are erroneous," (2) the term "turnkey" is not widely used and has no specific meaning in the industry of commercial sales of calendered industrial fabric, and (3) defendant's $5.97 price was substantially in excess of established industry pricing. (ECF No. 161-1 at 4.)

Defendant argues that Mr. Obermeyer's proposed testimony is non-specific and conclusory, and no facts are presented to support the same. (ECF No. 161 at 6-7; ECF No. 166 at 6-7.) In response, plaintiff asserts that the underlying bases for Mr. Obermeyer's proposed testimony have been offered, and the proposed testimony is sufficiently specific. (ECF No. 162 at 12-14.)

The Court finds that the first topic of proposed testimony—about Mr. Leach's opinions—does not satisfy Rule 26(a)(2)(C), while the other two categories do satisfy the rule. With respect to the proposed testimony about Mr. Leach, it simply cannot be said that plaintiff's disclosure provided a summary of the facts and opinions about which Mr. Obermeyer proposed to testify. The disclosure states only that Mr. Obermeyer would testify that Mr. Leach's opinions were erroneous. If this was enough, then the Court can hardly imagine any disclosure that would not comply with Rule 26(a)(2)(C). Arguably the far more detailed facts and opinions set forth in plaintiff's response with respect to this area of testimony satisfy Rule 26(a)(2)(C), but those facts and opinions merely go to show the inadequacy of plaintiff's original disclosure.

With respect to the proposed testimony about the use of the term "turnkey," this disclosure satisfied Rule 26(a)(2)(C)'s requirements for the subject matter to be disclosed (the term turnkey), and to summarize facts (Mr. Obermeyer's experience in the industry) and opinions (that turnkey is not widely used). Defendant argues that this testimony is not based upon any facts. But, for the same reason that this Court found Mr. Leach's testimony about the selling of products at a turnkey

9

rate to be supported by facts, the Court finds Mr. Obermeyer's testimony to be supported by his experience in the industry. Put another way, Mr. Obermeyer's testimony is no more ipse dixit than Mr. Leach's.

With respect to the proposed testimony about pricing in the industry, as limited *supra*, this too satisfied Rule 26(a)(2)(C). Plaintiff's disclosure sets forth the subject matter (pricing in the industry), facts (Mr. Obermeyer's experience), and opinion (defendant's pricing exceeded other prices).

> **3. Was Plaintiff's Failure to Adequately Disclose Mr. Obermeyer's Proposed Testimony About Mr. Leach's Opinions Substantially Justified or Harmless?**

Federal Rule of Civil Procedure 37 ("Rule 37") provides that, when a party fails to comply with Rule 26(a) with respect to information or a witness, the party is not allowed to use such information or witness at trial, unless the failure was "substantially justified" or "harmless." Fed.R.Civ.P. 37(c)(1). Here, plaintiff only relies upon the "harmless" exception. (ECF No. 162 at 14.) In this Circuit, courts are guided by the following factors in considering whether a Rule 26(a) violation was harmless: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999).

Plaintiff argues that there is no prejudice to defendant because Mr. Obermeyer's knowledge has been central to this case and is well-known. (ECF No. 162 at 14.) Plaintiff argues that any insufficiency in its disclosure can be easily cured by including specific citation to third-party quotes and Mr. Obermeyer's deposition testimony. (*Id*. at 15.) Plaintiff argues that there is no potential for

trial disruption or to re-open discovery because Mr. Obermeyer's opinions have been expressed throughout the litigation. (*Id*.) Finally, plaintiff argues that it has not acted in bad faith. (*Id*. at 15-16.)

The Court cannot agree with plaintiff that its inadequate disclosure of Mr. Obermeyer's proposed testimony about Mr. Leach's opinions was harmless. As an initial matter, not one of the arguments plaintiff makes with respect to harmlessness are directed to this proposed testimony. (*See id*. at 14-16.) And, it is not this Court's role to create arguments for plaintiff as to why the inadequate disclosure of this proposed testimony was harmless. Moreover, even if the Court was willing to accept plaintiff's arguments, plaintiff makes no attempt to explain how Mr. Obermeyer's proposed testimony about Mr. Leach's opinions is something that is central to this case, well-known, or supported by citation to deposition transcripts. Contrary to plaintiff's assertion, there is no citation in the response to deposition transcripts supporting this proposed testimony. (*See id*. at 7-9.)

As a result, the Court finds that defendant would be prejudiced by this proposed testimony because it is certainly not evident from plaintiff's original disclosure the scope of the testimony that plaintiff planned to elicit. Equally important, plaintiff revealed the scope of Mr. Obermeyer's planned testimony just over two months before this case is set for trial. The Court also finds that plaintiff has failed to show that it would be easy to cure the prejudice, given that plaintiff fails to explain either how any part of the record supports Mr. Obermeyer's proposed testimony, or, even if there was such support, how supplementation of plaintiff's disclosure at this late stage could cure the prejudice.

As for disruption of trial, the Court finds, on the record presented in the parties' papers, a wash. Notably, the parties' arguments essentially consist of defendant arguing that discovery, and

thus, a delay to trial, is necessary, and plaintiff arguing that no additional discovery is necessary. (*See* ECF No. 166 at 10; ECF No. 162 at 15.) Neither party provides any real explanation of why their position is correct, however, or any citation to the record for why further or no further discovery is necessary. The closest either party gets is defendant in appearing to assert that it may have conducted a more in-depth deposition of Mr. Obermeyer if it had known he would be disclosed as an expert. (*See* ECF No. 166 at 9.) However, defendant identifies no additional questions it would have asked Mr. Obermeyer if it had been aware of his status as an expert. Ultimately, the Court is not in a position to resolve this factor in either party's favor.

As for bad faith, the Court is again not in a position to find, as fact, that plaintiff engaged in bad faith with respect to its disclosure of Mr. Obermeyer. The Court doubts whether it could ever be in a position to make such a determination as fact. That being said, the Court cannot ignore (1) the utter inadequacy of plaintiff's original disclosure of Mr. Obermeyer's proposed testimony about Mr. Leach's opinions, and (2) the scope of the disclosures about that same testimony in plaintiff's response. The two are simply polar opposites apart. And, the Court finds that plaintiff must have been aware of what it would set forth in its response some time before it actually filed the response. Why plaintiff took so long to add meat to the bare bones of its original disclosure is beyond the Court. Whether this amounts to bad faith, the Court cannot say, but, under the circumstances of this case, the Court finds plaintiff's conduct to be willful.

In summary, the Court finds three of the four factors to weigh against plaintiff. Irrespective of the numbers game, the Court would not find plaintiff's conduct to be harmless. As a result, pursuant to Rule 37(c)(1), the Court will not allow Mr. Obermeyer to testify about Mr. Leach's opinions.

Accordingly, the Obermeyer motion is GRANTED IN PART and DENIED IN PART.

**III.    Conclusion**

For the reasons discussed herein, the Court:

(1)   GRANTS IN PART and DENIES IN PART plaintiff's Motion to Exclude Expert Testimony of Jeff Leach (ECF No. 160); and

(2)   GRANTS IN PART and DENIES IN PART defendant's Motion to Exclude Plaintiff's Rebuttal Expert Witness Disclosures and Exclude Expert Testimony (ECF No. 161).

**SO ORDERED.**

DATED this 8th day of March, 2018.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge